## CIRCUIT COURT OF BALTIMORE CITY.

Filed April 17, 1906.

CHARLES PAGE
VS.
DAVID M. MAULSBY ET AL.

*George R. Willis* and *Joseph C. France* for plaintiff.
*Edgar G. Miller, Jr.*, and *C. Alex. Fairbank, Jr.*, for defendants.

SHARP, J.—

The bill in this case was filed to obtain a decree for the redemption of a ninety-nine year lease.

The facts out of which this controversy arises are admitted in the pleadings, and are as follows:

On the 9th day of March, 1864, Henry Tiffany leased to James Boyce a lot of ground at the northeast side of Madison avenue, beginning at Dolphin street, running northwesterly on Madison avenue 140 feet, with a depth of 130 feet to Morris alley. The term was ninety-nine years, "beginning the day next before the day of the execution" of the lease. The lease contained the stipulations usual in a ninety-nine year lease, and reserved a ground rent of $700 a year, payable in equal semi-annual instalments on the 1st day of March and September.

The lease also contained the following covenant:

"And further, the said Henry Tiffany, for himself, his heirs and assigns, hereby covenants with said James Boyce, his executors, administrators and assigns, that when, and as the above described lot of ground shall have been improved by the erection thereon of good and substantial brick or stone dwelling houses, not less than three stories high and twenty feet front, he, the said Henry Tiffany, his heirs or assigns, will, at the request, and the proper cost of the said James Boyce, his executors, administrators or assigns, execute and deliver to him, or to them, a separate lease for each house so built with a lot of ground and curtilage appertaining thereto, thereby so apportioning and dividing the said rent hereby reserved, that each lot and house into which the whole shall be so sub-divided, shall be liable and bound solely for its own rent, which shall be a fair proportion of the whole, and payable semi-annually, on the days above mentioned for the payment of the whole rent.

Subsequently, the title to the leasehold estate became vested in Balster Herman, and the title to the reversion in Robert L. Hocmelle and others. Herman having improved two of the lots by the erection of houses, each twenty feet front and three stories in height, demanded separate leases for these lots.

Accordingly, on the 11th day of December, 1893, the owners of the reversion executed a lease to Balster Herman of the lots on which the houses had been erected.

This lease was for the unexpired portion of the term created by the lease from Tiffany to Boyce. The ground rent reserved was $100 on each lot, payable in semi-annual instalments on the first day of March and September, these days being the days on which the ground rent was payable in the Tiffany lease. It was agreed that the rent reserved in this lease was a fair proportion of the original rent. The later lease referred to the lease from Tiffany to Boyce, set out in full the covenant relating to the division of the property, and recited the fact that the lessee had erected a house of the character described in the covenant on each of the lots, and he was, therefore, entitled under said covenant to separate leases. The lease also contained the following stipulation:

"It is expressly understood and agreed, that this lease is executed only for the purpose of performing, as to the two lots hereinbefore last mentioned, the covenant hereinbefore mentioned, and that it shall not in any way effect the original lease, or the residue of the lot therein described, except to the extent of reducing, by the sum of $200, the rent payable thereunder."

On the 6th day of August, 1894, Robert L. Hocmelle and the other owners of the reversion executed another "lease" to Balster Herman. This instrument conveyed the remainder of the property described in the lease from Tiffany to Boyce. The property was divided into eight lots, six fronting on Madison avenue—each with a width of sixteen feet eight inches, with a depth of 100 feet to a five foot alley, and two on Dolphin street, each with a front of fifteen feet with a depth of 100 feet. The lot at the corner of Dolphin street and Madison avenue was subjected to a ground rent of $125; the five other lots on Madison avenue were each subjected to a ground rent of $85; and the two lots on Dolphin street to a ground rent of $75, making an aggregate ground rent of $700 for the eight lots.

The term was for 99 years, beginning on the 1st day of September, 1894. The lease from Tiffany to Boyce was mentioned in the usual references for title at the end of the description of the property, but there was no par·

ticular reference to the covenant relating to the division of the property, nor did it anywhere appear that the instrument was made pursuant to such covenant.

It was agreed at the hearing that there was no surrender of the term created in the Tiffany lease, or any part thereof, before the two later leases were made.

The leasehold interest in the eight lots described in the last lease became vested in E. B. Hunting, and one of the lots on Dolphin street was conveyed by Hunting to the complainant, Charles Page. Mr. Page contended that under the Act of 1888, Chapter 395, the ground rents were redeemable. That act provides:

"All rents reserved by leases or subleases of land hereafter made in this State for a longer term than fifteen years, shall be redeemable at any time after the expiration of ten years from the date of such lease or sub-lease, at the option of the tenant, after a notice of six months to the landlord, for a sum of money equal to the capitalization of the rent reserved at a rate not to exceed six per cent."

Mr. Page gave the notice required by the Act on the 18th day of February, 1905, and the owners of the reversion having refused to execute a deed of the reversion, this bill was filed on the 7th day of September, 1905.

The defendants are David M. Maulsby and others, trustees, who have acquired the reversion since the execution of the last-mentioned lease.

The defendants contend, that the lease was made pursuant to the covenant contained in the original lease from Tiffany to Boyce, and was not redeemable, that lease having been created before the passage of the Act of 1888, Chapter 395.

They rely on the case of Flook vs. Hunting, 76 Md., 178. In that case, the facts were as follows:

Mr. Hunting, who had acquired the leasehold estate in the property, leased by Tiffany to Boyce, contracted in writing to sell it to Luther F. Flook, and, in the contract, stipulated that, "when Flook shall have erected the dwelling houses mentioned in the covenant, he can demand and procure from the owner of the original rent, the separate leases above mentioned, and the rents reserved by the separate leases will be redeemable after ten years from their respective dates for a sum of money equal to the capitalization of the rents at six per cent. per annum, under the provisions of the Act of 1888, Chapter 395."

Flook refused to comply with the contract on the ground that the rents to be created would not be redeemable under the Act of 1888 as stipulated in the contract. This question was submitted to the Circuit Court of Baltimore city on a case stated, a pro forma decree passed, and an appeal taken to the Court of Appeals.

The Court of Appeals determined that the ground when divided and cleared according to the stipulations of the lease from Tiffany to Boyce would not be subject to the operation of the Act of 1888.

"The object of the covenant was simply to provide for the division and apportionment of the rent, which, by the original lease, was one and indivisible. Nothing is said about changing the character of the rent, so as to make it redeemable, and therefore less valuable. It is evident that the apportioned rent was to be paid in the same way as the original rent; and that the tenants of the apportioned parts of the leasehold were to have the benefit of the covenants contained in the original lease, and to be subject to the burdens imposed by them. It is not to be supposed that they were to be made liable to more onerous burdens, or to be entitled to greater benefits than those mentioned in these covenants. They were to occupy the position of the original lessee in all respects, except that their rents were to be apportioned. It is true that it is covenanted that the original lessor, or his assigns, shall execute separate leases for the different houses and their lots; but this was the convenient and appropriate mode of apportioning the rent. These separate leases are to be considered in connection with the covenant in the original lease authorizing and requiring them to be made. By virtue of this covenant they spring out of the original lease, and are virtually separate portions into which it is required to be divided. They cannot be considered as new and independent transactions originating at the time they are to be executed. There is a covenant in the original lease for a renewal from time to time, forever. These renewals will be founded on the

considerations which sustain the first lease, and are really but continuations of it; they derive their existence from it, and unless the obligation of a contract may be violated, they must continue to be made with all the covenants of the first lease embodied in them. The separate leases mentioned in the covenant for apportionment of rent bear the same relation to the original lease, as the leases will do, which are to be made under the covenants to make renewals forever."

The lease of December 11, 1893, from Hocmelle to Balster appears to have been made in accordance with this decision.

This lease was a complete instrument in the form usual in ninety-nine year leases. The term was the unexpired portion of the term created in the Tiffany lease. The lease recited that the lessee having erected dwellings of the character described in the covenant on the two lots described was entitled to separate leases. It was moreover distinctly agreed that the lease was made pursuant to the covenant in the Tiffany lease.

But the lease of August 6, 1894, now in question, from Hocmelle to Balster was of a different character.

It was in form a new and complete lease. The term created was not the unexpired portion of the term created by the Tiffany lease, but a new term beginning September 1st, 1894, thirty years after the beginning of the original term. The lots were not of the size provided in the Tiffany lease, but smaller; nor was the ground rent the same. The Tiffany lease reserved a ground rent of $700 on the entire lot. The lease of December 11, 1893, reserved rents of $100 on each of the two lots described, which it was agreed was a fair proportion of the original rent.

The lease of August 6, 1894, reserved rents aggregating for the eight lots described $700, so that the aggregate of the rents payable thereafter on the entire lot was $900, instead of $700. It was not stipulated that the lease was made pursuant to the covenant in the Tiffany lease, nor was there any particular reference to that covenant. In fact, the only reference to the Tiffany lease was the recital giving the origin of the lessee's title, customary in the premises of deeds at the end of the description of the property, and which was as follows:

"Which said eight lots and parcels of ground comprise and are intended to comprise and include all that portion of the lot described in an indenture of lease from Henry Tiffany to James Boyce, dated the 9th of March, 1864, and recorded among the Land Records of Baltimore city in Liber A. M., No. 246, Folio 308, except the two lots and parcels of ground which were by indenture of lease hereinafter referred to, bearing date the eleventh of December, 1894, and recorded among the Land Records of Baltimore city, prior hereto leased by the parties of the first part to Balster Herman."

The words would not suffice to bring the last lease under the operation of the covenant in the Tiffany lease, and the decision of the Court of Appeals, particularly in view of the facts that the last lease is in form a complete instrument and could take effect independently, that the term created was a new term beginning thirty years after the beginning of the old term, and that the size of the lots and necessarily the character of the improvements and the ground rents reserved were different from those referred to in the covenant.

The facts that the lessee was already in possession under the Tiffany lease, and there was no formal surrender, do not alter the case. The legal effect of the new lease was a surrender of the old term by operation of law. 18 Ency. of Law, 359.

The conclusion must be that the lease of August 6, 1894, was a new and independent lease, and, therefore, subject to the operation of the Act of 1888, Chapter 395.